IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

LUSE THERMAL TECHNOLOGIES, LLC

    Plaintiff,

v.                                               Case No.: 24-cv-11995

MICHAEL BALDUFF

and

N.A. LOGAN, INC.,

    Defendants.

## VERIFIED COMPLAINT

Plaintiff, Luse Thermal Technologies, LLC, by its undersigned attorneys, Amundsen Davis, LLC, as and for its Verified Complaint against Defendants, Michael Balduff ("Balduff") and N.A. Logan. Inc. ("N.A. Logan") (together with Balduff, the "Defendants"), alleges as follows:

### NATURE OF THE ACTION

1. This action arises from Balduff's unlawful download and transfer of over twenty files containing Luse's trade secrets and confidential information, while still on consultant status at Luse, but after joining one of Luse's competitors, N.A. Logan, and the Defendants' use of Luse's trade secrets and confidential information to unfairly compete against and cause Luse devasting harm.

1

2. This action is further based upon the breach of Balduff's agreement not to compete, not to solicit customers and employees, and not to use confidential information against Luse at a competitor.

## THE PARTIES

3. Plaintiff, Luse, is an Illinois corporation registered to transact business in Illinois with a principal place of business located at 3990 Enterprise Court, Aurora, IL 60504. Luse's core business is focused on providing nationwide construction related services and products including, but not limited to mechanical insulation contracting.

4. Luse has facilities in Aurora, Illinois and Milwaukee, Wisconsin. Luse's Chairman & CEO and President are both employed in its Illinois facility and are the primary employees who manage Luse's confidential information and trade secrets that are the subject of this action.

5. Upon information and belief, Balduff is an adult resident of Oklahoma currently residing at 16500 Stevens Rd, Shawnee, OK 74801.

6. Upon information and belief, N.A. Logan is an Indiana corporation whose registered agent is Anthony N. Logan, located at 3000 Burr Street, Gary, IN 46406, which is also its principal place of business.

7. N.A. Logan provides nationwide construction related services and products including, but not limited to mechanical insulation contracting.

## JURISDICTION AND VENUE

8. This Court has exclusive, original subject matter jurisdiction pursuant to 18 U.S.C. § 1836(c) (actions arising under the DTSA); 28 U.S.C. § 1331 (federal question jurisdiction); 18 U.S.C. § 1030 (computer fraud and abuse act) and 28 U.S.C. § 1332 (diversity of citizenship; amount in controversy) and the doctrines of ancillary and pendent jurisdiction.

9. This Court has personal jurisdiction over Defendants because they engaged in intentional conduct directed towards Illinois that Defendants knew would likely be suffered by Luse in Illinois. Among other things, misappropriating Luse's trade secrets and confidential information located in Illinois. On information and belief, Defendants have committed tortious acts in Illinois and this judicial district or otherwise established contacts with Illinois such that the exercise of personal jurisdiction is proper.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions occurred in this judicial district, in particular a substantial part of the events giving rise to this action occurred in this judicial district. In addition, pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in this judicial district because N.A. Logan is deemed to reside in Illinois pursuant to 28 U.S.C. § 1391(c)(2).

## FACTUAL ALLEGATIONS

**A. Luse's Business and Its Valuable Trade Secrets and Confidential Information**

11. Luse was established as a roofing company in Chicago, Illinois in 1923 and has continuously expanded its service offerings to meet the needs of the construction industry. It currently provides mechanical insulation services, environmental remediation, and specialty contracting services.

12. As part of its business, Luse has developed, and uses, various proprietary and confidential trade practices, trade materials, and other trade secrets. These trade secrets are the result of years of time, money and labor.

13. Luse's trade secrets at issue in this case include, but are not limited to the following (collectively referred to as "Luse Trade Secrets and Confidential Information"): specialized business methods, techniques, plans and know-how relating to the business of the Company;

advertising and marketing materials and concepts; customer information, methods for developing and maintaining business relationships with clients and prospects, and lists of customers prospects; procedural manuals; and employee training and review programs and techniques.

14. The Luse Trade Secrets and Confidential Information derive significant economic value from not being generally known to the public. This information was developed by Luse over a substantial period of time through substantial costs and investment. If this information could have been learned at all, it would have taken a substantial period of time to learn, at a substantial cost. The Luse Trade Secrets and Confidential Information provide Luse with economic value and a competitive advantage.

15. Luse has taken, and continues to take, extensive measures to maintain the secrecy of the Luse Trade Secrets and Confidential Information, and to prevent disclosure of this information to the general public. For example, Luse maintains secure physical premises and stores its electronic records on a secured, password-protected network. Luse also has implemented multi-factor authorization and conditional access policies for access to its aggregated quotations/proposals and estimating tools. Employees must meet certain minimum criteria before gaining access, including agreeing to maintain the confidentiality of Luse Trade Secrets and Confidential Information.

16. In addition, Luse's employees contractually agree that the Luse Trade Secrets and Confidential Information are "a valuable and unique asset of [Luse], developed and perfected over considerable time at substantial expense to [Luse]." Luse employees further agree not to use or disclose the Luse Trade Secrets and Confidential Information. Employees also contractually agree that, promptly upon termination, they will return to Luse the original and all copies of any and all correspondence, memoranda, diagrams, books, records and other papers and items embodying any

of Luse Trade Secrets and Confidential Information, its business and its customers, whether prepared by the Employee or others.

17. Luse has been vigilant about protecting the secrecy of the Luse Trade Secrets and Confidential Information due to its significant economic value to Luse and competitors.

**B. Balduff's Employment with and Obligations to Luse**

18. Luse hired Balduff on May 7, 1998 as a project manager.

19. As a condition of his employment with Luse, Balduff entered into a Confidentiality Agreement (the "Agreement'). A true and correct copy of the Agreement is attached hereto as <u>Exhibit A</u>.

20. The Agreement defines "Confidential Information" as "Confidential Information of a technical or business nature relating to [Luse's] business which may not be known to the environmental/asbestos abatement/insulation contracting industry at large. By was of illustration but not limitation, Confidential Information includes: "specialized business methods, techniques, plans and know-how relating to the business of the Company; advertising and marketing materials and concepts; customer information, methods for developing and maintaining business relationships with clients and prospects, and lists of customers prospects; procedural manuals; and employee training and review programs and techniques."

21. Pursuant to the Agreement, Balduff agreed "that during his or her employment by [Luse] and thereafter following the termination of such employment, he or she will not, personally or for any other person or entity, directly or indirectly, make use of (except on behalf of [Luse]) or divulge to any person or entity not authorized by [Luse] to have access thereto, any Confidential Information."

22. Pursuant to the Agreement, Balduff also agreed that "[u]pon termination of his or her employment for any reason, the Employee will promptly surrender to the Company all correspondence, written memoranda, diagrams, books, records and Confidential Information about the Company, its business and its customers, which is in his possession or under his control, whether prepared by the Employee or by others."

23. Pursuant to the Agreement, Balduff also agreed that during his employment with Luse he "will devote his or her entire time and attention to faithfully and diligently performing the duties of such employment, and will not engage in any business activity in competition with Luse." Balduff further agreed "that for a period of two years following the termination of such employment, he or she will not call on or solicit for asbestos abatement, insulation services, environmental services, or other activities engaged in by [Luse] or its affiliates (or for the sale of any products used in those industries) to any person, firm or corporation which was a customer of [Luse] at any time during [Balduff's] employment by [Luse]."

24. Pursuant to the Agreement, Balduff also agreed that the agreements "relate to matters which are special, unique and extraordinary in character and the breach of these agreements by [Balduff], may cause substantial injury to [Luse] which may be irreparable and/or in amounts which are difficult to ascertain. Therefore, [Luse] shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction, either in the law or in equity, to obtain damages for any breach thereof or to enjoin [Balduff] from performing acts prohibited thereby during the period covered, or for other equitable relief, but nothing herein contained shall be construed to prevent any other remedy which [Luse] may elect to invoke.

25. For Balduff to perform his job as an estimator for Luse, he needed to use the proprietary software and to access the confidential and trade secret information.

**C. Balduff's Resignation of Employment and Misappropriation of the Luse Trade Secrets and Confidential Information.**

26. In January of 2024 Balduff retired from Luse and moved to Oklahoma. At the time of his retirement Balduff demanded an increased retirement bonus which Luse provided. In addition, Balduff agreed to provide future estimating assistance as a consultant at an hourly rate of $100. To accomplish the consultant tasks, Balduff retained a company laptop and e-mail access.

27. Upon his departure, Luse reminded Balduff of his post-employment obligations.

28. At some point following his retirement from Luse, and while he was still on consulting status with Luse, Balduff commenced work for Defendant N.A. Logan.

29. After starting with N.A. Logan, Balduff accessed the Luse computer system and downloaded proprietary software, customer and pricing information, which had nothing to do with his consulting duties.

30. Luse was able to perform a forensic examination of Balduff's computer activity. Such examination revealed that Balduff downloaded material which included the following:

- a confidential estimate he had prepared for one of Luse's customers two months before his retirement;
- Luse's confidential rate sheet for US Steel dated October 3, 2024;
- two copies of Luse's proprietary bid estimating excel spreadsheet;
- Luse's confidential 2023 general rate sheet; and
- a confidential, competitive estimate for one of Luse's customers dated January 10, 2024.

A true and correct copy of the list of material that Balduff downloaded is attached hereto as Exhibit B.

31. Balduff downloaded the information, described above, to a personal thumb drive.

32. One of the items that was downloaded was a quote to University Park Generation, that was prepared for Luse in an attempt to win the bid and gain the project being bid.

7

33. Upon information and belief, Balduff, while working for N.A. Logan, modified said bid to undercut Luse' pricing to win the bid on behalf of N.A. Logan.

34. Balduff successfully won the bid on the basis of the lowered bid.

35. Luse learned of the bid through a material supplier that informed Luse that Balduff was ordering product for the new job on behalf of N.A. Logan and not Luse. Balduff kept his work for N.A. Logan a secret from Luse, even while Luse kept Balduff on consultant status.

36. But for the consultant status, Balduff would not have had the need for the Luse computer, or to access the Luse IT system.

37. In the last two weeks of October 2024, Luse learned that two of its clients were being serviced by Balduff on behalf of N.A. Logan.

38. These two clients are mechanical contractors that frequently subcontract insulation services to Luse. Both had previously worked with Balduff while he was at Luse. Luse typically has between five and ten subcontracts in place with these contractors at any given time.

39. Following Balduff's employment with N.A. Logan, Balduff used the confidential and trade secret information to divert the business from Luse to N.A. Logan.

40. When Luse asked Balduff if he was, in fact, working for a competitor, Balduff confessed that he was working for N.A. Logan and that he had been using Luse' proprietary program to prepare bids for N.A. Logan.

41. In addition to the customer identified in Paragraph 32, above, there is an unknown number of additional customers for which Balduff prepared bids against Luse and on behalf on N.A. Logan.

42. The downloads by Balduff were done in excess of any authority given to Balduff associated with his consultant work for Luse.

## FIRST CLAIM FOR RELIEF
## Breach of Contract - Balduff

43. Luse repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

44. Paragraph 4 of the Agreement contains a provision regarding non-competition and reads as follows: "The Employee agrees that during his or her employment by the Company the employee will devote his or her entire time and attention to faithfully and diligently performing duties of such employment, and will not engage in any business activity in competition with the Company."

45. While still on consultant status by the Company, Defendant was employed by Defendant NA Logan.

46. N.A. Logan is a direct competitor of Luse.

47. Balduff's simultaneous employment with N.A. Logan, while working as a consultant with Luse, constitutes a breach of the non-competition portion of the Agreement.

48. Balduff's breach of the Agreement is the direct and proximate cause of damages to Luse.

49. Balduff's breach of the Agreement has caused Luse harm, and, if not enjoined, will continue to cause Luse irreparable harm.

50. Paragraph 4 of the Agreement also contains language prohibiting the solicitation of Company customers. It reads as follows: "[T]hat for a period of two years following the termination of such employment, he or she will not call on or solicit for asbestos abatement, insulation services, environmental services, or other activities engaged in by [Luse] or its affiliates (or for the sale of any products used in those industries) to any person, firm or corporation which was a customer of [Luse] at any time during [Balduff's] employment by [Luse]."

9

51. Balduff directly solicited former customers that he serviced at Luse on behalf of N.A. Logan.

52. Balduff's solicitation directly resulted in a loss of business from Luse to N.A. Logan.

53. Without injunctive relief, Balduff and N.A. Logan will continue to illegally use Luse confidential and Trade Secret information to poach Luse' customers, causing Luse irreparable harm.

## SECOND CLAIM FOR RELIEF
### Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et. seq.

54. Luse repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

55. Balduff has accessed Luse's internal computer system, which is not open to the public, in order to view and copy information maintained therein.

56. Such entry was not authorized by Luse, exceeded any authorized access that he had, and was pursued by Balduff clandestinely. Among other things, Balduff used the unauthorized access to Lues's computer system to obtain documents containing sensitive and proprietary information regarding Luse's customers, their preferences, and bidding and pricing information.

57. Upon information and belief, Defendants have used, and intend to use, the material obtained from the unauthorized access to unfairly compete with Luse and interfere with Luse's prospective economic relations.

58. Defendants' conduct involves interstate communication in that, among other things, Balduff transferred the documents and information copied from Luse's internal computer system through interstate channels.

59. Defendants' conduct has caused Luse harm.

10

60. Luse is entitled to an injunction restraining Defendants from engaging in further such acts in violation of the Federal Computer Fraud and Abuse Act.

61. Luse is further entitled to recover from Defendants damages, in excess of $75,000.00, in a precise amount to be proved at trial.

### THIRD CLAIM FOR RELIEF
### Violation of the Defend Trade Secrets Act

62. Luse repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

63. The Defend Trade Secrets Act of 2016 ("DTSA") creates a private cause of action in favor of the "owner of a trade secret that is misappropriated. . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

64. Under the DTSA, a trade secret includes:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if —
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. 18 U.S.C. § 1839(3).

65. Under the DTSA, "misappropriation" is defined as "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper

means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty."

66. The Luse Trade Secrets and Confidential Information, consist of, but are not limited to, specialized business methods, techniques, plans and know-how relating to the business of the Company; advertising and marketing materials and concepts; customer information, methods for developing and maintaining business relationships with clients and prospects, and lists of customers prospects; procedural manuals; and employee training and review programs and techniques.

67. Balduff had access to Luse Trade Secrets via his former employment and continued consulting relationship with Luse.

68. Luse has taken reasonable measures to keep its trade secrets confidential.

69. Luse derives independent value from its trade secrets not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from the disclosure or use of the information.

70. The Luse Trade Secrets and Confidential Information are used to provide construction related services and to sell construction related products throughout the United States, and as a result, are related to a product or service used in, or intended for use in, interstate commerce.

71. Balduff has misappropriated the Luse Trade Secrets and Confidential Information in one or more of the following ways:

    a)    By acquiring the Luse Trade Secrets and Confidential Information through improper means (*e.g.*, misrepresentations, breach or inducement of a breach of a duty to maintain secrecy);

b) By disclosing and/or using the Luse Trade Secrets and Confidential Information without Luse's consent;

c) By disclosing and/or using the Luse Trade Secrets and Confidential Information without Luse's consent for his own commercial benefit while knowing, or having reason to know, at the time of the disclosure and/or use, that the Luse Trade Secrets and Confidential Information were acquired through improper means;

d) By disclosing and/or using the Luse Trade Secrets and Confidential Information without Luse's consent for his own commercial benefit while knowing, or having reason to know, at the time of the disclosure and/or use, that the Luse Trade Secrets and Confidential Information were acquired under circumstances giving rise to a duty to maintain the secrecy and limit the use of those trade secrets; and

e) By disclosing and/or using the Luse Trade Secrets and Confidential Information without Luse's consent for his own commercial benefit while knowing, or having reason to know, at the time of the disclosure and/or use, that the Luse Trade Secrets and Confidential Information were derived from or through a person who owed a duty to Luse to maintain the secrecy and limit the use of those trade secrets.

38. The actions taken by Balduff were taken as part of his employment with N.A. Logan, and were taken with the full knowledge of N.A. Logan.

39. Balduff used Luse's Trade Secret information, including but not limited to, its proprietary bidding software, product sourcing and margin information, past bids and customer preferences to win bids for N.A. Logan against Luse.

40. Balduff and N.A. Logan acted willfully, maliciously, and/or in reckless disregard for Luse's rights, in that Balduff and N.A. Logan knew, or had reason to know, pursuant to the terms of the Agreement, that Balduff was not authorized to use the Luse Trade Secrets and Confidential Information in competition with Luse or for Balduff's and/or N.A. Logan's commercial benefit.

41. As a result of Balduff's misappropriation of the Luse Trade Secrets and Confidential Information, Luse has suffered and will continue to suffer actual damages, and/or Balduff and N.A. Logan have been unjustly enriched, in an amount to be determined at trial.

42. As a result of Balduff's and N.A. Logan's misappropriation of the Luse Trade Secrets and Confidential Information, Luse has suffered and will continue to suffer irreparable harm if Balduff's misconduct is not enjoined.

43. Pursuant to 18 U.S.C. § 1836(b)(3)(C), Luse is entitled to exemplary damages for Balduff's and N.A. Logan's willful and malicious misappropriation of the Luse Trade Secrets and Confidential Information.

44. Pursuant to 18 U.S.C. § 1836(b)(3)(D), Luse is entitled to recovery of its actual attorneys' fees because of Balduff's and N.A. Logan's willful and malicious misappropriation of the Luse Trade Secrets and Confidential Information.

### FOURTH CLAIM FOR RELIEF
### Violation of the Illinois Trade Secrets Act

43. Luse repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

44. The Luse Trade Secrets and Confidential Information, consist of, but are not limited to, information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

45. Balduff had access to Luse Trade Secrets via his former employment with Luse.

14

46. Luse has taken reasonable measures to keep its trade secrets confidential.

47. Luse derives independent value from its trade secrets not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from the disclosure or use of the information.

48. The Luse Trade Secrets and Confidential Information are used to provide construction related services and to sell construction related products throughout the United States, and as a result, are related to a product or service used in, or intended for use in, interstate commerce.

49. Balduff has misappropriated the Luse Trade Secrets and Confidential Information in one or more of the following ways:

   a. By acquiring the Luse Trade Secrets and Confidential Information through improper means (*e.g.*, misrepresentations, breach or inducement of a breach of a duty to maintain secrecy);

   b. By disclosing and/or using the Luse Trade Secrets and Confidential Information without Luse's consent;

   c. By disclosing and/or using the Luse Trade Secrets and Confidential Information without Luse's consent for his own commercial benefit while knowing, or having reason to know, at the time of the disclosure and/or use, that the Luse Trade Secrets and Confidential Information were acquired through improper means; and

   d. By disclosing and/or using the Luse Trade Secrets and Confidential Information without Luse's consent for his own commercial benefit while knowing, or having reason to know, at the time of the disclosure and/or use, that the Luse Trade Secrets

and Confidential Information were acquired under circumstances giving rise to a duty to maintain the secrecy and limit the use of those trade secrets.

50. The actions taken by Balduff were taken as part of his employment with N.A. Logan, and were taken with the full knowledge of N.A. Logan.

51. Balduff used Luse's Trade Secret information, including but not limited to, its proprietary bidding software, product sourcing and margin information, past bids and customer preferences to win bids for N.A. Logan against Luse.

52. Balduff and N.A. Logan acted willfully, maliciously, and/or in reckless disregard for Luse's rights, in that Balduff and N.A. Logan knew, or had reason to know, pursuant to the terms of the Agreement, that Balduff was not authorized to use the Luse Trade Secrets and Confidential Information in competition with Luse or for Balduff's and/or N.A. Logan's commercial benefit.

53. As a result of Balduff's misappropriation of the Luse Trade Secrets and Confidential Information, Luse has suffered and will continue to suffer actual damages, and/or Balduff and N.A. Logan have been unjustly enriched, in an amount to be determined at trial.

54. As a result of Balduff's and N.A. Logan's misappropriation of the Luse Trade Secrets and Confidential Information, Luse has suffered and will continue to suffer irreparable harm if Balduff's misconduct is not enjoined.

55. Pursuant to 765 ILCS 1065/4, Luse is entitled to recover both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In the alternative, Luse is entitled to damages caused by misappropriation measured in terms of a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

56. Pursuant to 765 ILCS 1065/4, Luse is entitled to exemplary damages for Balduff's and N.A. Logan's willful and malicious misappropriation of the Luse Trade Secrets and Confidential Information in an amount not to exceed twice the award of actual damages.

57. Luse is entitled to recovery of its actual attorneys' fees and costs because of Balduff's and N.A. Logan's willful and malicious misappropriation of the Luse Trade Secrets and Confidential Information.

### FIFTH CLAIM FOR RELIEF
### Tortious Interference with Contract

58. Luse repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

59. The Agreement constitutes a valid and enforceable contract between Luse and Balduff.

60. N.A. Logan had actual knowledge of the existence and language of the Agreement.

61. N.A. Logan intentionally and unjustifiably induced Balduff to breach the Agreement.

62. Balduff subsequently breached the Agreement, as outlined above.

63. The Breach was caused by the N.A. Logan's wrongful conduct.

64. As a direct result of N.A. Logan's tortious interference with the Agreement, Luse has suffered and will continue to suffer irreparable harm.

**Wherefore, Plaintiff, Luse Thermal Technologies, LLC, prays for relief as follows:**

1. For an Order permanently enjoining Balduff from breaching the Agreement to run for the duration of the prohibition set forth in the Agreement;

2.	For an Order permanently enjoining N.A. Logan from employing Balduff in violation of the conditions of the Agreement to run for the duration of the prohibitions set for in the Agreement;

3.	For an award of damages against Balduff and/or N.A. Logan to compensate Luse for its damages in an amount to be determined at trial;

4.	For an award of punitive damages against Balduff and/or N.A. Logan in an amount to be determined at trial;

5.	For actual attorney's fees, costs and disbursements; and

6.	Such further relief as the Court shall deem just and equitable.

## JURY DEMAND

Plaintiff, Luse Thermal Technologies, LLC, hereby demands a jury trial as to the above cause of action.

Dated: November 21, 2024						**LUSE THERMAL TECHNOLOGIES, LLC,**

								By: /s/ Peter E. Hansen
									One of Plaintiff's Attorneys

| | |
|---|---|
| Peter E. Hansen (ARDC No.: 6323532) | Stephen D. Pauwels (ARDC No.: 6317390) |
| AMUNDSEN DAVIS, LLC | AMUNDSEN DAVIS, LLC |
| 3815 East Main Street, Suite A-1 | 150 North Michigan Avenue, Suite 3300 |
| St. Charles, IL 60174 | Chicago, IL 60601 |
| (630) 587-7971 - Telephone | (312) 894-3271 - Telephone |
| PHansen@amundsendavislaw.com | SPauwels@amundsendavislaw.com |
| **ATTORNEYS FOR PLAINTIFF** | |

**VERIFICATION**

I, Gordon Vierck, am a duly authorized representative of Luse Thermal Technologies, LLC ("Plaintiff"). I hereby state that I have read the foregoing Verified Complaint and that the statements set forth therein are true as I believe based on my personal knowledge and information supplied to me by Plaintiff's employees and agents and through records kept by Plaintiff in the ordinary course of business. I understand that false statements herein are subject to the penalties of 28 U.S.C. § 1746 relating to sworn declarations.

Executed on this 20th day of November, 2024.

                                                *DocuSigned by:*
                                                *Gordon Vierck*
                                                6768560B60AB44D
                                                Gordon Vierck
                                                General Manager